UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLACK POLITICAL EMPOWERMENT
PROJECT, et al.

           Plaintiffs,

      v.

CAROL AICHELE et al.,

           Defendants.

Civil Action No. 12-cv-03808

Hon. Cynthia M. Rufe

Hon. Carol Sandra Moore Wells

## <u>JOINT NOTICE OF SETTLEMENT</u>

Plaintiffs Black Political Empowerment Project and Pennsylvania Communities

Organizing for Change, Inc., doing business as ACTION United, and Defendants Carol

Aichele, in her official capacity as Secretary of the Commonwealth; Gary D. Alexander,

in his official capacity as Secretary of the Department of Public Welfare; and Dr. Eli N.

Avila, in his official capacity as Secretary of the Pennsylvania Department of Health

(collectively, the "Parties"), in connection with the Parties' request for approval of the

Stipulations and proposed Orders submitted to the Court on August 17, 2012, hereby give

notice of the attached Settlement Agreement entered into by the Parties on August 14,

2012.

Dated:  August 22, 2012                                    Respectfully submitted,


/s/ David Newmann                              /s/ Kevin R. Bradford

By: David Newmann  (PA#82401)       By: Kevin R. Bradford  (PA#88576)
Virginia A. Gibson   (PA#32520)         Senior Deputy Attorney General
HOGAN LOVELLS US LLP                   Gregory R. Neuhauser
1835 Market Street,  29th Floor            Chief, Litigation Section
Philadelphia, PA 19103                       Office of Attorney General
(267) 675 4600                                  21 S. 12th Street, 3rd Floor
                                                         Philadelphia, PA 19107
David Rubino                                     (215) 560-2262
Demos                                              (215) 560-1031
220 Fifth Avenue
New York, New York 10001
(212) 485-6239                                   Counsel for Defendants Carol
                                                         Aichele, in her official capacity as
                                                         Secretary of the Commonwealth;
Sarah Brannon                                   Gary D. Alexander, in his official
Michelle Rupp                                    capacity as Secretary of the
Project Vote                                       Department of Public Welfare; and
1350 Eye St NW, Suite 1250             Dr. Eli N. Avila, in his official
Washington, DC 20005                      capacity as Secretary of the
(202) 546-4173 ext. 303                     Pennsylvania Department of Health

Bob Kengle
Alejandro Reyes
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
(202) 662-8389


Counsel for Plaintiffs Black
Political Empowerment Project
and Pennsylvania Communities
Organizing for Change, Inc.,
doing business as ACTION
United

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLACK POLITICAL EMPOWERMENT PROJECT, et al.

Plaintiffs,

v.

CAROL AICHELE et al.,

Defendants.

Civil Action No. 12-cv-03808

Hon. Cynthia Rufe

## SETTLEMENT AGREEMENT

### I.   INTRODUCTION

Plaintiffs Black Political Empowerment Project ("BPEP") and Pennsylvania Communities Organizing for Change, Inc., doing business as ACTION United ("ACTION United") (collectively "Plaintiffs"), through their undersigned counsel, filed a Complaint in this action on July 5, 2012 alleging violations of Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5, by Carol Aichele, in her official capacity as Secretary of the Commonwealth; Gary D. Alexander, in his official capacity as Secretary of the Department of Public Welfare; and Dr. Eli N. Avila, in his official capacity as Secretary of the Pennsylvania Department of Health (collectively, "Defendants"). The Plaintiffs and Defendants (together, the "Parties") now desire to resolve this action without further litigation and expense. Plaintiffs allege systemic past and ongoing violations of Section 7 of the NVRA and sought declaratory and injunctive relief from the Court. The Defendants deny any and all liability. By entering into this Settlement Agreement, Defendants do not admit any liability or any violation of the NVRA or any other law, and Plaintiffs do not admit that Defendants have a valid defense to the allegations of Plaintiffs' Complaint. Accordingly, the Parties agree to the following terms in full and final resolution of Plaintiffs' claims under Section 7 of the NVRA. Pursuant to the terms of this Settlement Agreement, the Defendants shall implement and maintain the procedures and practices set forth in Sections II through VII, below. Except where otherwise indicated, these procedures and practices shall be implemented immediately upon execution of the Agreement. The Defendants' agreement to implement these procedures and practices is not and shall not be interpreted as an acknowledgment that any of these particular procedures and practices are not already in place. Defendants represent and warrant that the obligations undertaken pursuant to this Agreement are in accordance with all applicable state and federal laws and regulations.

1

## II.   DEFINITIONS

A. "Covered transaction" means those transactions identified in 42 U.S.C. § 1973gg-5(a)(6)(A), i.e. applications, recertifications, renewals, and changes of address, whether in-person or remotely, as applicable, including but not limited to via the telephone, facsimile, mail, or electronically.

B. "Secretary" means Defendant Carol Aichele and her successors in their official capacities as Secretary of the Commonwealth of Pennsylvania, including the attorneys, agents, trustees, investigators, representatives, employees, officers, contractors, and consultants of any of them.

C. "DOH" means the Pennsylvania Department of Health, and includes, without limitation, its offices, including Local Agency Offices, agents, employees, and Third Party Contractors providing covered transactions, as well as attorneys, trustees, investigators, representatives, officers, contractors, and consultants of any of them.

D. "DPW" means the Pennsylvania Department of Public Welfare, and includes, without limitation, its offices, including County Assistance Offices, agents, and employees providing covered transactions, as well as attorneys, trustees, investigators, representatives, officers, contractors, and consultants of any of them.

E. "WIC Local Agency Offices" means all local offices overseen or operated by DOH, Division of WIC, that provide public assistance benefits through covered transactions, including any Third Party Contractors, defined *infra*, their agents and employees.

F. "DPW County Assistance Offices" ("CAOs") means DPW's county-level offices, including their District Offices where applicable, as well as their agents and employees, that provide public assistance benefits to DPW applicants and clients, including through the provision of covered transactions, whether through in-person direct contact or remotely.

G. Third Party Contractors means any third parties with which DOH or DPW contract that provide covered transactions.

H. "Local Election Official" shall mean all county clerks, all city clerks or all county election departments, including the officers, agents, employees and representatives of the same.

I. "NVRA" means the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg *et seq.*

J. "Section 7" shall mean Section 7 of the NVRA, 42 U.S.C. § 1973gg-5.

K. "Public assistance benefits" means those benefits that are subject to Section 7 of the NVRA as set forth by the United States Department of Justice guidance *NVRA Questions and Answers,* currently available at

2

http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php, which are administered by DPW and DOH. As of the date of this agreement, the public assistance programs administered by DPW and DOH include: the Supplemental Nutrition Assistance Program (SNAP formerly the food-stamp program), the Special Supplemental Food Program for Women, Infants, and Children (WIC), the Temporary Assistance for Needy Families (TANF) program (formerly the Aid to Families with Dependent Children or AFDC program), and the Medicaid program. This also includes state public assistance programs.

L. "Voter registration form" or "voter registration application" means the mail voter registration application form described in Section 9 of the NVRA, 42 U.S.C. § 1973gg-7(a)(2), or the equivalent Pennsylvania voter registration application form.

M. "Voter preference/notice form" means the form required pursuant to Section 7 of the NVRA, 42 U.S.C. § 1973gg-5(a)(6)B), that includes boxes for Public Assistance applicants and clients to check to indicate whether the applicant would like to register or decline to register to vote and/or any version of a form asking public assistance applicants and clients if they would like to register to vote.

N. "Applicant for Public Assistance" or "public assistance client" means each person who engaged in a covered transaction with a DPW CAO or WIC Local Agency Office covered by Section 7 of the NVRA, or who does so in the future.

O. "Remote transaction" means any interaction wherein a client applies for public assistance benefits, renews or recertifies for public assistance benefits, or submits a change of address via the telephone, facsimile, mail, or electronically.

III.  **DISTRIBUTION OF VOTER PREFERENCE/NOTICE FORM AND VOTER REGISTRATION APPLICATIONS TO PUBLIC ASSISTANCE CLIENTS**

A. DPW CAOs and WIC Local Agency Offices shall distribute a voter registration application with each application for public assistance and with each renewal, recertification or change of address related to such assistance, except in cases where an applicant for Public Assistance declines in writing to receive a voter registration application by checking "no" to the voter preference question. When a public assistance client or applicant answers the voter preference question "yes" they would like a voter registration application, or when the client or applicant leaves the voter preference question blank, a voter registration application will be distributed during the course of that covered transaction, for all remote and in-person transactions (during in-person covered transactions this means that voter registration will be provided immediately).

B. All regulations, policies and procedures regarding agency-based voter registration promulgated by the Secretary, DPW or DOH, including *inter alia* the "Pennsylvania Guide to Agency-Based Voter Registration Programs," shall direct that a voter

3

registration form be provided to every client who answers "yes" or leaves blank a voter preference/notice form.

Any and all written policies shall be reviewed for compliance with the terms of this Agreement and shall be modified as soon as practicable if needed. In any event, the policy of distributing of voter registration forms—including distribution when an applicant leaves the voter preference/notice form blank—shall begin immediately upon execution, in accordance with the terms set by this Agreement.

DOH and DPW have represented that there are no relevant regulations applicable to either agency that address compliance with Section 7 of the NVRA and/or voter registration opportunities for public assistance. The Secretary has issued "Pennsylvania's Guide to Agency-Based Voter Registration Programs," which has been updated to reflect the procedure set forth in III(A), above.

C. As soon as practicable, DPW will change any and all of its forms for covered transactions that are available through COMPASS and/or available to DPW CAO employees on the DPW intranet through "docushare" to wholly comply with 42 U.S.C. § 1973gg-5(a)(6)(B). These changes shall include ensuring that the voter preference/notice form including in the application includes the question, *"If you are not registered to vote where you live now, would you like to apply to register to vote here today?"* as well as all other language mandated by that section. No such form shall include additions or statements that might reasonably dissuade applicants for Public Assistance from registering, such as, "For County Office Use." DPW will notify Plaintiffs' counsel when this is completed.

DPW represents that certain changes were made recently to these forms for covered transactions and that the process for printing hard copies of those recently updated forms is already underway at this time. Plaintiffs' counsel has reviewed those recently updated forms. Plaintiffs agree that this printing can proceed and that these recently updated forms can be used at DPW CAOs.

On or before September 7, 2012, DPW will discontinue distribution at DPW CAOs any and all versions of the forms for covered transactions other than those agreed to herein. On or before September 7, 2012, DPW will remove any unused paper versions of those forms from all DPW CAOs that do not comply with the provisions of this Agreement. For any and all future printing of forms for covered transactions beyond printing taking place in the immediate future, the applications will be updated to wholly comply with 42 U.S.C. § 1973gg-5(a)(6)(B).

These modifications shall be incorporated into all versions and formats of the voter preference/notice form, including hard copies, PDF documents, electronic forms, in COMPASS and any successor computer-guided systems or online application programs, and in any training materials and registration related documents, including those located on the DPW, DOH or Secretary's webpages.

Defendants will ensure that any future modifications of their voter preference/notice forms wholly comply with 42 U.S.C. § 1973gg-5(a)(6)(B).

D. Distribution of Voter Preference/Notice Forms and Voter Registration Applications During Remote Transactions

1. To the extent that Defendants conduct a covered transaction with a public assistance client exclusively via phone, DPW CAOs and DOH Local Agency Offices shall either:

   a. mail to all such clients a voter preference/notice form and a voter registration application; or
   b. ask the client whether s/he wishes to register to vote. If the client responds in the affirmative or declines to answer, the client shall be mailed a voter preference/notice form and a voter registration application. If the client responds in the negative, a voter preference/notice form will be mailed to the client.

   Each agency shall choose only one option at a time, such that the agency's practice is uniform throughout the Commonwealth, but the agencies may switch from one option to the other as suits their needs. This provision shall not be construed as requiring DPW and DOH to choose the same option.

2. When a client receives covered transaction documents (i.e. applications, renewals, recertifications, change of address or covered transaction documents identified with different terminology) by mail or other remote means not expressly provided for elsewhere in this section III.D, DPW CAOs and DOH Local Agency Offices shall either:

   a. include a voter registration application and voter preference/notice form with the agency covered transaction documents that is mailed or otherwise transmitted to the client, or
   b. include a voter preference/notice form with the agency covered transaction documents that are mailed or otherwise transmitted to the client and subsequently mail a voter registration application to each client who checks "yes" to the voter preference question or leaves it blank (blank response would include failing to return the voter preference/notice form).

   Each agency shall choose only one option at a time, such that the agency's practice is uniform throughout the Commonwealth, but the agencies may switch from one option to the other as suits their needs. This provision shall not be construed as requiring DPW and DOH to choose the same option.

3. DPW and DOH shall include the official voter registration application and voter preference/notice form on their website(s) (COMPASS as this pertains to DPW) as part of any downloadable public assistance benefits applications, any

downloadable renewal or recertification forms, or any downloadable change of address forms.

4. When a client submits a change of address to DPW CAOs or DOH Local Agency Offices by mail or electronically, those offices shall either:

   a. mail a voter registration application and voter preference/notice form to the client promptly; or
   b. mail a voter preference/notice form to the client or include a voter/preference form with the change of address submission document, and subsequently mail a voter registration application to each client who checks "yes" to the voter preference question or leaves it blank.

   Each agency shall choose only one option at a time, such that the agency's practice is uniform throughout the Commonwealth, but the agencies may switch from one option to the other as suits their needs. This provision shall not be construed as requiring DPW and DOH to choose the same option.

5. Covered Transactions via COMPASS and Pertaining only to DPW

   a. If a client selects "Yes" in response to the voter preference question or leaves it blank in connection with a covered transaction submitted through COMPASS, a voter registration application will be forwarded to the client.
   b. Within 6 months of the signing of this Agreement, DPW shall modify any related computer systems to ensure that voter applications are automatically mailed to clients who select "Yes" in response to the voter preference question or leave it blank.
   c. A .pdf download of the official bar-coded voter registration application will be available on the COMPASS site as soon as practicable.

E. Voter Preference Question in Case Management Systems:

   1. Within fourteen days after the execution of this Agreement, DOH will review the voter registration question for all covered transactions on all online programs or electronic case management systems used by any caseworker inputting information on the client's behest. Said review shall determine whether, after the voter preference question is posed, caseworkers have the option of responding only "Yes" or "No," to this question followed by a "hard-stop."

   2. "A "hard-stop" at the voter preference question is currently part of the system ("QUICK WIC") used at WIC Local Agency Offices. This system is used during all covered transaction systems that occur at WIC Local Agency Offices. This prevents caseworkers from completing a client's covered transaction without answering the voter preference question. That hard stop will be maintained.

   3. If DOH, in the future, changes its procedures and/or systems such that it offers online benefits applications or any other online covered transactions to public

assistance clients, then DOH will ensure that any such programs should include the required NVRA language therein.  Said programs shall also ensure that, after the voter preference question is posed, clients have the option of responding only "Yes" or "No," to this question followed by a "hard-stop."

F.  If Pennsylvania, in the future, allows electronic voter registration, all options outlined above shall remain in any such online system but the option to connect through a link to the online voter registration application shall also be provided.

G.  Regardless of what method is used, during all remote transactions when a voter registration application is mailed a notice shall be provided that clients with questions pertaining to voter registration may call a toll-free number operated by DOH or DPW for assistance.

H  If the review described herein demonstrates that the current online systems or electronic case management systems used by public assistance clients or caseworkers do not comply with the obligations stated herein, such systems shall be updated as soon as practicable.  Similarly, to the extent that any online systems or case management systems do not comply with any provisions outlined herein, said systems shall be updated to conform with the requirements of this Agreement as soon as practicable.

I.  Coded Forms — On or prior to thirty (30) days after execution of this Agreement, all voter registration applications distributed to public assistance clients by DPW COAs and DOH Local Agency Offices, whether during an in-person transaction or sent to public assistance clients through the mail as a result of a remote transaction, shall be bar coded to indicate that the source of the application is a public assistance office. These voter registration applications shall be provided to DPW and DOH by the Secretary.

J.  Assistance

1. Each DPW CAO and DOH Local Agency Office shall provide the same degree of assistance with voter registration applications as is provided for the agency's own forms, unless declined by the client.

2. A cover letter regarding the availability of assistance, and including a toll free number, shall be mailed with voter registration applications every time a voter registration application is mailed to a public assistance client.

3. At a minimum, during in-office covered transactions wherein a client accepts assistance, employees at DPW CAOs and DOH Local Agency Offices shall examine voter registration applications to ensure that all required information—including the signature box—is complete.

IV.   MONITORING AND OVERSIGHT

7

A. Effective the date of this agreement, on a monthly basis and for a period of three years, DPW and DOH NVRA Coordinators shall provide to the Secretary a report containing the following data, aggregated by DOH and DPW, for the preceding month:

1) the number of covered transactions by type (application, renewal, recertification or change of address);
2) the number of voter registration applications transmitted to the appropriate elections authority;
3) the number of responses to the voter preference/notice form by type ("Yes," "No," and blank); blank is not a separate category under the current tracking systems which will be revised by January 31, 2013. In the meantime, a blank will be treated as a "Yes");
4) the number of voter registration applications distributed in aggregate by DPW CAOs and DOH Local Agency Offices, including the number of voter registration applications mailed to public assistance clients during remote transactions (with respect to DPW, the number of applications mailed to public assistance clients during remote transactions will be provided when the collection of this data becomes feasible, but in any event no later than 6 months from the effective date of this agreement)

The Secretary shall provide this data to the Plaintiffs' counsel no later than the last day of each following month, e.g. August 31, 2012 for data from the month of July. If the last day of the calendar month falls on a weekend or holiday, these reports shall be provided on the next business day thereafter.

As soon as practicably possible, the format in which this data is provided to Plaintiffs' counsel shall be converted from its native format to an Excel spreadsheet format or a type-written electronic tabular format that can be easily converted to Excel, and submitted via email to Plaintiffs' counsel.

B. Effective the date of this Agreement, on a monthly basis and for a period of three years, DPW and DOH shall provide to Plaintiffs' counsel a report containing the following data, delineated by DPW CAO or DOH Local Agency Office (or by District Offices or individual sites if possible), for the preceding month:

1) the number of covered transactions by type (application, renewal, recertification or change of address);
2) the number of voter registration applications transmitted to the appropriate elections authority;
3) the number of responses to the voter preference/notice form by type ("Yes," "No," and blank); blank is not a separate category under the current tracking systems which will be revised by January 31, 2013. In the meantime, a blank will be treated as a "Yes")
4) the number of voter registration applications distributed by each office, including the number of voter registration applications mailed to public

assistance clients during remote transactions(with respect to DPW, the number of applications mailed to public assistance clients during remote transactions will be provided when the collection of this data becomes feasible but in any event no later than 6 months from the effective date of this agreement).

When it becomes feasible, but in any event no later than 6 months from the date of this agreement, DPW will also submit the number of responses to voter preference/notice forms collected through COMPASS or any successor online system by type ("Yes," "No," or blank).

DPW and DOH shall provide this data to Plaintiffs' counsel no later than the last day of each following month, e.g. August 31, 2012 for data from the month of July. If the last day of the calendar month falls on a weekend or holiday, these reports shall be provided on the next business day thereafter. As soon as practicable, but in no event later than the end of the first quarter of this agreement, the reports shall be submitted in an Excel spreadsheet format or a type-written electronic tabular format that can be easily converted to Excel via email to Plaintiffs' counsel.

C. Each quarter DPW and DOH shall analyze the data collected in Section IV.B by comparing the number of voter registration applications submitted to local election official by each office for the current month with the number of covered transaction in each office, and that office's prior numbers of voter registrations submitted to local election officials, as well as with rates number of voter registration applications compared to number covered transactions across all offices.

Each quarter, the Secretary shall compare the total number of agency voter registrations processed by local election officials with the total number of voter registration applications that were submitted to local election officials by DPW and DOH offices, and provide this data to Plaintiffs' counsel.

Where a potential compliance problem is identified for an office, the Secretary, DPW and/or DOH shall contact the appropriate office to investigate the cause. Potential problems to be investigated or reviewed include, but are not limited to: (i) offices exhibiting unusually low registration rates as compared to their rates during previous reporting periods or to the rates of other comparable offices in the state; (ii) offices for which there is a significant disparity between the reported number of voter registration applications transmitted to elections officials and the number of voter registration applications that elections officials report receiving from DPW or DOH; (iii) offices exhibiting potential compliance problems based on information obtained from a site visit, any other auditing procedure, office managers or supervisors, or other appropriate sources; and (iv) offices that are the subject of a complaint from the public regarding the provision of voter registration. If the potential compliance problems are based on (i) above and there are more than three such offices during the quarter, DPW and DOH shall contact the three offices showing the most significant compliance issues within 30 days to investigate the cause, and in succeeding months, will review the remaining offices from the list of more than three.

Between January 1, 2013 and June 30, 2014, Plaintiffs' counsel may provide the Secretary with a list of up to two offices per quarter that Plaintiffs believe require further review and possible corrective action, with an explanation of the reason for review. In such a case, the Secretary shall promptly notify DPW or DOH, which shall conduct a review of any such offices to determine whether corrective measures are needed and shall communicate the results to Plaintiffs' counsel within thirty days after the conclusion of the review.

D. Site Visits

DPW, through Program Monitors, and DOH, through the DOH employees currently tasked with site reviews, shall conduct site visits of their respective public assistance offices to monitor, among other things, NVRA compliance. DPW and DOH will conduct a minimum of twelve (12) site visits per year. For each site visit, DOH and DPW will review the following:

1) sufficient supply of voter registration applications;
2) distribution of voter registration applications for each covered transaction;
3) distribution of voter preference/notice forms for each covered transaction;
4) recording of client responses to the voter preference question in the case management system;
5) recording of distribution of voter registration applications in the case management system;
6) offering of assistance with voter registration with each covered transactions;
7) collecting and submitting completed voter registrations in a timely manner to appropriate election officials.

To the extent a report is generated with regard to the above-reference site visits, a copy of that report will be provided to Plaintiffs' counsel. If requested, the Plaintiffs will agree to keep the content of any such reports confidential.

E. Additional Compliance Measures

DPW and DOH shall ensure that any complaints made by the public regarding the provision of voter registration by local offices shall be forwarded to the NVRA Site Coordinator and also forwarded to the Secretary, subject to confidentiality laws.

DPW and DOH shall take appropriate action, subject to personnel laws, when it is determined that a particular office or individual employee(s) at a particular office is/are not complying with Section 7 of the NVRA or the provisions of this Agreement, or otherwise are in need of further action(s) to assure compliance.

Within fourteen business days after execution of this Agreement, the Secretary shall provide the DPW and DOH NVRA Coordinators with a complete list of the last dates to register to vote in elections in Pennsylvania for the year 2012. The DPW and DOH

NVRA Coordinators shall distribute this list to the CAO and Local Agency Office NVRA Site Coordinators, respectively, who shall in turn distribute the list to all personnel in their CAO or Local Agency Office who interact with clients during covered transactions.

Thereafter, by December 15 of each year, the State NVRA Coordinator shall provide the DPW and DOH NVRA Coordinator with a complete list of voter registration deadlines for the coming year, as known at that time. The State NVRA Coordinator shall notify the DPW and DOH NVRA Coordinator promptly of any additional registration deadlines as they are established throughout the year for federal elections. The DPW and DOH NVRA Coordinators shall distribute the list to the CAO and Local Agency Office NVRA Site Coordinators, respectively, who shall in turn distribute the list to all personnel in their CAO or Local Agency Office who interact with clients during covered transactions.

F.   Personnel Policy

DPW NVRA Coordinators and pertinent DPW CAO employees and DOH's NVRA Coordinator shall be periodically reviewed for compliance with the NVRA's requirements, including through annual Employee Performance Reviews ("EPRs") as appropriate. Any potential corrective action, if needed, shall be made according to the DPW and DOH's existing procedures.

## V.   STAFFING

A.   Secretary of State NVRA Coordinator

The Secretary shall designate a staff position whose duties include being the "State NVRA Coordinator" and shall notify Plaintiffs' counsel as to the identity of that individual within fourteen business days after execution of this Agreement and upon any change of the identity of the State NVRA Coordinator during the term of this Agreement. The State NVRA Coordinator shall coordinate and oversee statewide compliance with the requirements of Section 7 of the NVRA. The State NVRA Coordinator's responsibilities shall include:

1)   providing support and guidance (including technical expertise) to DPW and DOH, including the DPW and DOH NVRA Coordinators (defined below), to assist them in identifying what is required to implement and comply with Section 7 of the NVRA, state implementing law and policy, and the provisions of this Agreement;

2)   serving as a liaison between the Secretary, DPW, DOH and local election authorities regarding NVRA compliance at DPW and DOH offices;

3)   timely review of the DPW and DOH reports on NVRA compliance;

4)   prompt reporting of suspected or known compliance problems at particular DPW and DOH offices to the respective DPW or DOH NVRA Coordinator for offices not in compliance with this Agreement or Section 7 of the NVRA;

5) consulting regularly with the DPW and DOH NVRA Coordinator regarding office-level compliance and any corrective action plans; and

6) ensuring that DPW and DOH offices have an adequate supply of coded voter registration applications.

B. DPW NVRA Coordinators

DPW shall designate a "DPW NVRA Coordinator" to ensure implementation of voter registration services within DPW, to monitor compliance with Section 7 of the NVRA and this agreement statewide, and to troubleshoot for local DPW and County Assistance Offices. DPW shall notify Plaintiffs' counsel as to the identity of that individual within fourteen business days after execution of the Agreement and upon any change of the identity of the DPW NVRA Coordinator during the term of this Agreement. The DPW NVRA Coordinator's responsibilities shall include:

1) maintaining an up-to-date list of County Assistance Office NVRA Site Coordinators (defined below), and if the DPW NVRA Coordinator learns at any time that a County Assistance Office NVRA Site Coordinators position is unfilled in any DPW or County Assistance Office, the DPW shall appoint an individual to fill that position within fifteen business days of the date of discovery;

2) coordinating and overseeing compliance with the requirements of Section 7 of the NVRA and the provisions of this Agreement. Such coordination shall involve regular communication with the Secretary's State NVRA Coordinator and the County Assistance Office NVRA Site Coordinators to ensure that DPW fully complies with the requirements of Section 7 and the provisions of this Agreement;

3) conducting reviews of compliance with Section 7 of the NVRA and the provisions of this Agreement at DPW offices as discussed above (see Section IV);

4) review of reports of on-site visits for compliance with Section 7 of the NVRA and the provisions of this Agreement (see Section IV);

5) providing corrective action guidance to County Assistance Office NVRA Site Coordinators for employees and/or offices not in compliance with Section 7 of the NVRA or the requirements of this Agreement;

6) reviewing the DPW monthly reports;

7) ensuring that DPW conducts NVRA education and training program, as discussed below;

8) will be copied on and monitor requests for resupply of coded voter registration applications and voter preference/notice forms from DPW-CAO NVRA Coordinator to Department of State.

C. DPW shall also designate a "County Assistance Office NVRA Site Coordinator" for each existing DPW and County Assistance Office to ensure implementation of and compliance with Section 7 of the NVRA. DPW shall notify Plaintiffs' counsel as to the identities of these individuals within fourteen business days after execution of the Agreement and upon any change of the identity of a County Assistance Office NVRA Site Coordinator during the term of this Agreement. Plaintiffs will not contact any

7

persons so identified at any time and will keep this information confidential. County Assistance Office NVRA Site Coordinators' responsibilities shall include:

1) reading and understanding the voter registration manual and other training materials to be prepared pursuant to this Agreement (see Section VI, below);
2) implementing corrective actions, as directed by the DPW NVRA Coordinator;
3) coordinating and overseeing implementation and compliance with the requirements of Section 7 of the NVRA and the provisions of this Agreement at the County Assistance Offices, including providing support, guidance and ensuring that timely training to DPW- County Assistance Office employees at their respective offices takes place regarding proper DPW NVRA procedures;
4) answering questions from the public relating to voter registration at County Assistance offices;
5) ensuring that signs are posted in prominent locations in their assigned County Assistance offices, advising the public of the right to register to vote at that site (see Section VII);
6) ensuring that County Assistance offices transmit all completed voter registration applications to the appropriate local election officials pursuant to the time frames specified by law;
7) ensuring that his or her assigned offices have an adequate supply of coded voter registration applications and voter preference/notice forms for distribution in the manner required by this Agreement, and notifying the DPW NVRA Coordinator when supplies are low; and
8) compiling and transmitting all data for the monthly reports, aggregated by office, to the DPW NVRA Coordinator.

In addition to the foregoing responsibilities in this Section V.C, County Assistance Office NVRA Coordinators shall be responsible for ensuring that the appropriate supervisory employee at each local County Assistance office implements his or her responsibilities as they pertain to NVRA compliance.

D. DOH NVRA Coordinators

DOH shall designate a "DOH NVRA Coordinator" to ensure implementation of voter registration services within DOH, to monitor compliance with Section 7 of the NVRA and this settlement agreement statewide, and to troubleshoot for local DOH and County Assistance Offices. DOH shall notify Plaintiffs' counsel as to the identity of that individual within fourteen business days after execution of the Agreement and upon any change of the identity of the DOH NVRA Coordinator during the term of this Agreement. The DOH NVRA Coordinator's responsibilities shall include:

1) maintaining an up-to-date list of Local Agency Voter Registration Coordinators (defined below), and if the DOH NVRA Coordinator learns at any time that a Local Agency Voter Registration Coordinator's position is unfilled in any DOH Local Agency Office, DOH will request, from the Local Agency Office, the name

of the person that would be covering those responsibilities both short term and long term;

2) coordinating and overseeing compliance with the requirements of Section 7 of the NVRA and the provisions of this Agreement. Such coordination shall involve regular communication with the Secretary's State NVRA Coordinator and the Local Agency Voter Registration Coordinators to ensure that DOH fully complies with the requirements of Section 7 and the provisions of this Agreement;

3) communicating and investigating voter registration concerns with the assistance of the Local Agency Voter Registration Coordinators

4) reviewing plans of corrective action on issues related to voter registration, which have been provided by the DOH Local Agency Office

5) reviewing quarterly the DOH reports in regards to NVRA compliance

6) ensuring that DOH conducts an NVRA education and training program, as discussed below;

7) assisting each Local Agency Office in maintaining an adequate supply of coded voter registration applications and voter preference/notice forms for distribution in the manner required by this Agreement; and

8) will be copied on and monitor requests for resupply of coded voter registration applications and voter preference/notice forms from DOH Local Agency NVRA Coordinator to Department of State.

E. DOH, through its grant agreements with Third Party Contractors, shall require a "Voter Registration Coordinator" for each Local Agency Office. DOH shall notify Plaintiffs' counsel as to the identities of these individuals within fourteen business days after execution of the Agreement and upon any change of the identity of a Voter Registration Coordinator during the term of this Agreement. Plaintiffs will not contact any persons so identified at any time. The DOH Voter Registration Coordinator's responsibilities shall include:

1) ordering from the Pennsylvania Department of State – Bureau of Commissions, Elections & Legislation an adequate supply of voter registration applications using the Voter Registration Materials Request Form (attached to policy manual) and maintaining an adequate supply of voter registration mail applications at all times;

2) assuring that the appropriate agency code is marked on the front of the voter registration mail application;

3) record keeping and reporting requirements;

4) monitoring voter registration activities;

5) training new employees; and

6) resolving questions and problems that arise in coordination with local election officials.

In addition to the foregoing responsibilities in this Section V.C, Local Agency Office Voter Registration Coordinator shall be responsible for ensuring that the appropriate supervisory employee at each local DOH or Local Agency office implements his or her responsibilities as it pertains to NVRA compliance.

14

## VI.   TRAINING

A. Within fifteen business days after the execution of this Agreement, the Secretary shall forward to Plaintiffs' counsel for review and comment NVRA training materials on the distribution policy when public assistance clients check "Yes" or leave the voter preference/notice form blank. The training materials shall include the requirement that, for those voter preference/notice forms in which the client checked "Yes" or left blank, registration applications be distributed immediately during all in-person covered transactions and in accordance with Section III(D) following all remote transactions, and that all voter registration applications submitted by clients during in-person transactions be checked for completeness as explained in this Agreement in Section III (I)(3). DPW and DOH will begin the training by September 7, 2012 and complete the training by September 14, 2012. The DPW and DOH materials will state that compliance with the procedures is mandatory pursuant to a legal agreement that resolved a federal lawsuit.

B. Within forty-five business days after the execution of this Agreement, the Secretary shall forward to Plaintiffs' counsel for review and comment comprehensive NVRA training materials, including a web-based training presentation and any other related training material, such as memorandums, regarding the requirements of Section 7 of the NVRA and all related Pennsylvania state laws. DPW and DOH shall, within forty –five business days after the execution of this Agreement, forward to Plaintiffs' counsel the procedures used by DPW-CAO and DOH Local Agency Offices to comply with both. In addition, these newly-created and/or updated materials shall reflect the requirements of this Agreement, including, but not limited to, identifying public assistance programs subject to the NVRA and informing employees that, for each covered transaction, the NVRA requires them to:

1) distribute voter registration applications, except in cases where an applicant for Public Assistance specifically declines a voter registration application in writing. In cases wherein an applicant leaves the voter preference question blank, a voter registration application will be distributed;
2) provide a Voter Preference/Notice form;
3) provide the same level of assistance to all clients in completing voter registration application forms as is provided with respect to every other service or application for benefits (unless the client specifically refuses such assistance), including ensuring that any client who requests assistance complete the voter registration application;
4) accept completed voter registration forms from clients; and
5) transmit each completed voter registration application to the County Boards of Elections within the prescribed time frame.

C. Before any manuals, PowerPoints, and any related training materials are finalized, the proposed manual and training materials will be provided to Plaintiffs' counsel for review and comment, and the Parties shall make every effort to ensure that the manual and training materials are finalized in time so that updated training materials

can be used during the training to be conducted pursuant to Section VI.E. Upon request by the Defendants, Plaintiffs will provide materials that they possess that may assist in the development of any manuals, PowerPoints, and any related training materials. The Secretary shall update the training materials when needed, and provide proposed updates to Plaintiffs' counsel for review and comment at least fourteen days prior to distribution of the updated materials, except that Plaintiffs' counsel will receive three days' notice for the initial targeted training which is to be completed by September 14, 2012. Updated materials shall be provided in a "redline" format indicating areas of recommended changes.

D. The Secretary's NVRA Coordinator shall be responsible for assisting in the development of training materials for DPW and DOH and for providing election-related expertise, guidance and support to DPW and DOH related to the training process (e.g., to communicate any changes in federal or state law that relate to voter registration at Public Assistance offices, or to address any problems with NVRA compliance, as determined by the procedures set forth in Section IV of this Agreement).

E. Apart from the training to be conducted by September 14, 2012, by January 31, 2013 and every six months thereafter for the term of this agreement, DPW and DOH shall conduct training of all NVRA Coordinators and all pertinent DPW and DOH employees. All NVRA Coordinators and employees shall complete that training, and DPW and DOH shall arrange some method by which attendance at the training will be memorialized. All NVRA Coordinators and DPW or DOH employees on annual, sick or other leave at the time when their annual training is scheduled shall be trained as soon as practicable after their return to active work status. All newly appointed NVRA Coordinators and all newly-hired DPW CAO or DOH Local Agency employees shall receive training equivalent to the annual NVRA training program as soon as practicable after their appointment or hire if the NVRA Coordinator or employee has not previously received the annual training.

F. DPW and DOH shall provide for special supplemental training for NVRA Coordinators and employees on new or amended NVRA policies as quickly as practicable after adoption of those policies.

G. DPW, DOH and the Secretary shall maintain the NVRA training materials and other NVRA support information in an electronic format that is easily accessible by NVRA Coordinators and employees engaging in covered transaction, such as through the DPW and DOH intranet.

H. Any third-party contractors providing NVRA-covered public assistance services pursuant to agreement with the DPW or DOH shall likewise be offered the training materials created in accordance with section VI.

## VII.   DPW AND DOH OFFICE PROCEDURES

Within fourteen business days of the execution of this agreement, each DPW-CAO and DOH Local Agency Offices shall prominently post a sign, provided by the Secretary and attached hereto as Exhibit A, generally advising the public of the opportunity to register to vote when an individual submits a benefits application, recertification, renewal, or a change of address and encouraging them to do so.

## VIII.   THIRD-PARTY CONTRACTORS/PROVIDERS:

To the extent that third-party entities, pursuant to future agreements with DOH or DPW, contract to provide covered services under section 7 of the NVRA which are administered by DOH or DPW, said agreements will contain language mandating compliance with the terms of the NVRA.

## IX.   ATTORNEYS' FEES AND EXPENSES

Plaintiffs shall be entitled to a payment reflective of the reasonable attorney's fees incurred by Plaintiffs as agreed upon under mediation with the Honorable Carol Sandra Moore Wells. Any reasonable attorney's fees in reaching this agreement toll as of the date of this agreement. Nothing herein shall limit Plaintiffs' right to seek reasonable attorney's fees under Section X.D., below.

## X.   ENFORCEMENT

A. The United States District Court for the Eastern District of Pennsylvania (the "Court") has and shall retain jurisdiction over this matter to resolve any disputes arising under this Agreement.

B. If any party believes that another party is in breach of this Agreement, or any other dispute arises under this Agreement, either party may notify the other party in writing of the asserted breach or dispute. The parties will work cooperatively and make best efforts to promptly remedy the identified breach or dispute without judicial intervention. If after seven days, the matter is not resolved, the parties may arrange a telephonic conference call with Judge Wells to attempt to resolve the issue. Any notice shall specifically identify the asserted breach of the Agreement or the nature of the dispute. If the asserted breach or dispute cannot be resolved to the satisfaction of both parties within 30 days of contacting Judge Wells, it shall be resolved by motion in accordance with a briefing and hearing schedule determined by Judge Wells.

C. This Agreement is not nor is it to be construed as a consent decree. In connection with any such motion for relief, contempt cannot be sought or obtained in relation to breach of this Agreement.

17

D. If the court grants a motion for relief, the prevailing party in any such motion for relief shall be entitled to recover its reasonable attorney's fees and costs.

## XI.  DISMISSAL AND RELEASE

A. Effective upon execution of this Agreement by all Parties, Plaintiffs' Motion for Preliminary Injunction shall be withdrawn, all pending deadlines and hearing dates shall be vacated, and this action shall be administratively closed for statistical purposes.

B. Effective upon execution of this Agreement, and during the period in which Defendants remain in compliance with this Agreement, Plaintiffs release Defendants from any and all claims and causes of action asserted in the Complaint, or that could have been asserted in the Complaint, arising at any time up to the execution of this Agreement.  Nothing herein shall limit Plaintiffs' rights or remedies under Section X. ("Enforcement") above.

C. In the event that the Court determines there has been any material breach of this Agreement by Defendants, any and all such claims and causes of action shall be restored and the release under Section XI.(B) shall no longer apply.

D. Upon the later of (a) the conclusion of the Term of this Agreement or (b) entry of a final, non-appealable order in any enforcement proceeding under Section X. ("Enforcement") above, this action shall be dismissed with prejudice.

E. Effective upon the dismissal of this action pursuant to Section XI.(D) above, Plaintiffs release Defendants from any and all claims and causes of action asserted in the Complaint, arising at any time up to the effective date of such dismissal.

## XII.  TERM

This Agreement shall become effective on the date of execution and shall remain in effect for three years.

## XIII.  EXECUTION IN COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall constitute an original instrument and all of which together shall constitute one and the same Agreement.

*With agreement by the Parties,*

On behalf of Plaintiffs Black Political
Empowerment Project and Pennsylvania
Communities Organizing for Change, Inc.,
doing business as ACTION United:

For the Defendants:

HOGAN LOVELLS
David Newmann (PA#82401)
Virginia A. Gibson (PA#32520)
1835 Market Street, 29th Floor
Philadelphia, PA 19103

CAROL AICHELE
Secretary of the Commonwealth

DEMOS A NETWORK FOR IDEAS AND
ACTION
David Rubino
Demos
220 Fifth Avenue
New York, New York 10001

GARY D. ALEXANDER
Secretary,
Pennsylvania   Department   of   PUBLIC
WELFARE

PROJECT VOTE
Sarah Brannon
Michelle Rupp
1350 Eye Street, NW, Suite 1250
Washington, DC 20005

DR. ELI N. AVILA
Secretary,
Pennsylvania Department of HEALTH

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
Robert Kengle
Alejandro Reyes
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005

19

*With agreement by the Parties,*

On behalf of Plaintiffs Black Political Empowerment Project and Pennsylvania Communities Organizing for Change, Inc., doing business as ACTION United:

For the Defendants:

_____

HOGAN LOVELLS
David Newmann (PA#82401)
Virginia A. Gibson (PA#32520)
1835 Market Street, 29th Floor
Philadelphia, PA 19103

_____

DEMOS A NETWORK FOR IDEAS AND ACTION
David Rubino
Demos
220 Fifth Avenue
New York, New York 10001

_____

PROJECT VOTE
Sarah Brannon
Michelle Rupp
1350 Eye Street, NW, Suite 1250
Washington, DC 20005

_____

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
Robert Kengle
Alejandro Reyes
1401 New York Avenue, N.W., Suite 400
Washington, D.C.  20005

_____

CAROL AICHELE
Secretary of the Commonwealth

_____

GARY D. ALEXANDER
Secretary,
Pennsylvania Department of PUBLIC WELFARE

_____

DR. ELI N. AVILA
Secretary,
Pennsylvania Department of HEALTH

19

*With agreement by the Parties,*

On behalf of Plaintiffs Black Political Empowerment Project and Pennsylvania Communities Organizing for Change, Inc., doing business as ACTION United:

For the Defendants:

_____

HOGAN LOVELLS
David Newmann (PA#82401)
Virginia A. Gibson (PA#32520)
1835 Market Street, 29th Floor
Philadelphia, PA 19103

CAROL AICHELE
Secretary of the Commonwealth

_____

DEMOS: A NETWORK FOR IDEAS AND ACTION
David Rubino
Demos
220 Fifth Avenue
New York, New York 10001

GARY D. ALEXANDER
Secretary,
Pennsylvania   Department   of   PUBLIC
WELFARE

_____

PROJECT VOTE
Sarah Brannon
Michelle Rupp
1350 Eye Street, NW, Suite 1250
Washington, DC 20005

DR. ELI N. AVILA
Secretary,
Pennsylvania Department of HEALTH

_____

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
Robert Kengle
Alejandro Reyes
1401 New York Avenue, N.W., Suite 400
Washington, D.C.  20005

19